JACKSON *v.* BOARD OF MAYOR AND ALDERMEN OF TOWN OF PORT GIBSON.*

(Division A.   March 21, 1927.)

[111 So. 828.   No. 26116.]

1.  JURY.   *Alderman's son held competent as juror, in action against city.*

   Son of city alderman *held* not disqualified as a juror in action against municipality for damages for death of plaintiff's wife coming in contact with electric wire, since municipality was real party to lawsuit with no individual liability of members of city council.

2.  DEATH.   *Damages to husband on wife's death for loss of society held for jury.*

In action against municipality for damages for death of wife, resulting from contact with electric wire, evidence relative to amount of damages accruing to husband for loss of society and companionship of wife *held* for jury.

*Corpus Juris-Cyc References: Death, 17CJ, p. 1312, n. 56, 61; Juries, 35CJ, p. 320, n. 23; p. 322, n. 63. Loss of consortium as element of damages in action by husband for wrongful death of wife, see annotation in L. R. A. 1916D, 187; 13 R. C. L. 1421; 4 R. C. L. Supp. 861.

APPEAL from circuit court of Claiborne county.

HON. E. L. BRIEN, Judge.

Action by Joe Jackson against the board of mayor and alderman of the town of Port Gibson. Judgment for plaintiff, and he appeals, alleging that the damage allowed was wholly inadequate and unreasonable. Affirmed.

*Jas. D. Thames* and *R. B. Anderson,* for appellant.

I. The verdict of five hundred dollars is grossly inadequate for the loss of a man's wife. It is difficult to see how the sum of five hundred dollars could compensate him for the loss of his wife's services and companionship. Here we have a young negro woman, eighteen years old, in good health and able to work, for whose death there is awarded to her husband who supported her the sum of five hundred dollars. The statute gives to the surviving spouse the same right of action that the deceased would have had if she had survived. And the survivor has the right to recover all damages which the deceased could have recovered, as well as all damages suffered by the survivor. See section 501, Hemingway's Code (section 721, Code of 1906); *Belzoni Hardwood Lbr. Co.* v. *Langford,* 89 So. 917, 127 Miss. 234.

II. *The trial jury.* One juror was a son of W. C. Guthrie, one of the aldermen of the defendant town. The plaintiff challenged the juror for cause and the challenge was overruled. This was error. Relationship to a

party to the suit creates such implied bias or prejudice as will disqualify a juror. *Davis* v. *Sarcy,* 79 Miss. 292, 30 So. 823; *Garner* v. *State,* 76 Miss. 515, 25 So. 363.

Of course, neither the juror nor his father would have to pay the judgment rendered by the jury against the town, but the town council was charged with negligence in the maintenance of the wire which killed plaintiff's wife and the entire board of mayor and aldermen was directly interested in the suit. It seems so clear that this juror was necessarily interested and, therefore, disqualified that it was useless to argue it further. See *Berbette* v. *State,* 67 So. 853; *Hubbard* v. *Rutledge,* 57 Miss. 7; *R. R. Co.* v. *Mask,* 64 Miss. 738, 2 So. 360; *City of Birmingham* v. *Gordon,* 167 Ala. 334.

Those maintaining high tension wires along which a deadly charge of electricity is transmitted are under the duty of exercising the highest degree of care and diligence to protect the public from injury. See *Laurel L. & Ry. Co.* v. *Jones,* 102 So. 1; *Potera* v. *Brookhaven,* 95 Miss. 774; 49 So. 617; *Williams* v. *Canton,* 103 So. 211.

We submit, therefore, that the verdict and judgment for the plaintiff was correct except as to the amount awarded.

*M. M. Satterfield* and *E. S. & J. T. Drake,* for appellee.

I. *Damages.* For this court to reverse on account of inadequacy of damages it must be shown either that the verdict was not commensurate with the damage shown to have been sustained by the decedent, or that the verdict was not commensurate with the damage shown to have been sustained by the husband, Joe Jackson. *St. L. & S. F. R. R. Co.* v. *Moore et al.,* 471. The statute which rules in this case is section 501, Hemingway's Code.

Do not confuse the *right* of recovery with the elements of damages recoverable. See *Belzoni Hardwood Lbr. Co.* v. *Cinquimani,* 102 So. 470. Did Joe Jackson, the appel-

lant, sustain any loss or suffer any damage by the death of the decedent? We contend that he did not under the proof given of her unfaithfulness which was known to appellant. The unfaithfulness of the wife certainly would not affect the "damages to decedent" but would affect the alleged damages suffered by her husband.

Counsel urge that five hundred dollars is grossly inadequate for the loss of a man's wife. In the average case this amount would be inadequate, but in the one at bar this amount is excessive. A man suffers no damages at all through the loss of an unfaithful wife.

With *Belzoni Hardwood Lbr. Co.* v. *Langford,* 89 So. 919, and again in 102 So. 470, which appellant quotes and relies upon, we agree. This case relied on so strongly by appellant is in point in that the spouse of appellant was guilty of misconduct, to prove which evidence was introduced. The only element that entered into that case different from the case at bar is that the decedent in that case lived six hours and suffered intense physical and mental pain and anguish, while in the case at bar death was instantaneous.

We contend that the damages which should be awarded in the case at bar should be limited to damages to the decedent, if any, as was the actual and specific effect of the ruling in the case cited. See *Florida Cent. & P. R. R. Co.* v. *Foxworth,* 25 So. 338; *St. L. & S. F. R. R. Co.* v. *Moore et al.,* 58 So. 471; *Belzoni Hardwood Lbr. Co.* v. *Langford,* 89 So. 919; *Belzoni Hdw. Lbr. Co.* v. *Cinquimani,* 102 So. 470; 8 R. C. L. 833, section 108; 1916 C. L. R. A. 806; *Orendorf* v. *N. Y. Cent. R. R. Co.* (N. Y.), 119 App. Div. 638; 59 L. T. (N. S.) 218; 52 J. P. 822; *Ingersoll* v. *Detroit R. R. Co.,* 163 Mich. 268; *Ry. Co.* v. *Spicker,* 61 Tex. 427.

Under the authorities quoted above and the facts in this case the appellant is not entitled to recover any damages as damages to him as husband. But even if the wife had been faithful and the relations between the two had been the best, under the proof submitted in this

case the value of the life expectancy of the decedent could not be assessed or recovered. There was not one iota of evidence upon which any estimate could be made to ascertain the value of her life expectancy, and any damages given on account of this would be merely speculative. *New Deemer Mfg. Co.* v. *Alexander,* 85 So. 102.

II. *The trial jury.* E. P. Guthrie, who served as a juror, was the son of W. C. Guthrie, who was an alderman of the municipality owning the wire that caused the death of Rebecca Jackson. W. C. Guthrie was merely an administrative officer of said municipality and had no more pecuniary interest in the result of the suit than any other citizen of said municipality. To hold that E. P. Guthrie was incompetent to be a juror in this case would be practically to hold that no citizen of a municipality sued for damages could be a juror in said suit.

Argued orally by *R. B. Anderson,* for appellant, and *J. T. Drake* and *M. M. Satterfield,* for appellee.

McGOWEN, J., delivered the opinion of the court.

In this cause the appellant, Joe Jackson, plaintiff in the court below, recovered judgment against the board of mayor and aldermen of the town of Port Gibson, Miss., for the sum of five hundred dollars for damages accruing to him as the husband of Rebecca Jackson, who was instantly killed on the 25th of September, 1925, by coming in contact with an electric wire charged with electricity, which had been borne to the ground by a decayed tree falling across it.

Joe Jackson was not satisfied with the judgment of the lower court. He avers the damage allowed him by the jury is wholly inadequate and unreasonable, and assigns one reason for a general reversal of the case, to-wit, that after he had exhausted his peremptory challenges, E. P. Guthrie was called and permitted to serve

on the jury. In challenging him for cause it was agreed between counsel that he was a son of Mr. W. C. Guthrie, who was an alderman of the municipality of Port Gibson at the time of the death of Rebecca Jackson.

Unless it can be said that the board of mayor and aldermen are parties to the litigation, the challenge for cause was on the law properly overruled by the court.

The municipality was the real party to the lawsuit, and the declaration contained no statement upon which individual liability of the members of the city counsel could be bound, or could be held liable, or could be said to have an interest, except such as any other taxpayer of the municipality is presumed to have. An alderman would not be competent to serve as a juror, where the municipality was a party to the suit, because he is an employee of the municipality, and this court has held that employees of a corporation are not competent jurors. *Hubbard* v. *Rutledge,* 57 Miss. 7; *Berbette* v. *State,* 109 Miss. 94, 67 So. 853; *R. R. Co.* v. *Mask,* 64 Miss. 738, 2 So. 360; *City of Birmingham* v. *Gordon,* 167 Ala. 334, 52 So. 430.

Guthrie, Sr., not being a party to the suit against the municipality of which he was an alderman, his son was not disqualified because of relationship to him. To hold that he would be disqualified would be to hold that all those persons who are related within the ninth degree, under the civil law, would, if members of a corporation, thereby become disqualified. Common-law rule is stated in Cooley's Blackstone, pages 362, 363, and 364, sections 1, 2, 3, and 4.

While the court might properly have excused the juror challenged in this case, he was not incompetent, and we cannot reverse the case because he was retained on the jury.

Second. Counsel for appellant earnestly insist that five hundred dollars is grossly inadequate as damages accruing to the husband for the loss of his wife.

According to the record in this case, the woman died instantly, and no attempt was made to prove any of the elements of damages which would accrue to the decedent, and the only element of damage was that which accrued to the husband for the loss of the "society and companionship of his wife."

The evidence of the plaintiff was to the effect that, for many months prior to the death of his wife, he had lived nine miles from Port Gibson; that she left him there where they had previously lived, and went to the town of Port Gibson, saying she preferred to live in town. When she went to Port Gibson she took up her abode in a two-room house, serving as cook for a man who paid her as a cook. He was an unmarried man. She was a woman of about eighteen years of age. They borrowed a bed for his use, and a cot for her use from a neighbor. He occupied one room, she the other. On occasions her husband visited her there. She had visited the country where her husband was on two or three different occasions. The character of the visits, in point of time, were of short duration. She contributed in no way to the support of her husband or to his comfort as a housewife. He had given her money on two or three occasions after she moved to town. Under these circumstances it was exclusively, as we see it, within the province of the jury to fix the amount of damages accruing to the husband for the loss of the "society and companionship" of his wife, and we are of the opinion that we are not warranted in disturbing the finding of the jury.

*Affirmed.*